IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| Total90, LLC  *Plaintiff,*  v.  Nike, Inc.  *Defendants.* | C<small>IVIL</small> A<small>CTION</small> N<small>O.</small> 25-2325  J<small>URY</small> T<small>RIAL</small> R<small>EQUESTED</small>  S<small>ECTION</small>: D  J<small>UDGE</small>: W<small>ENDY</small> B. V<small>ITTER</small>  M<small>AGISTRATE</small>: E<small>VA</small> J. D<small>OSSIER</small> |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF**

**MOTION FOR TEMPORARY RESTRAINING ORDER**

Plaintiff, Total90, LLC, respectfully submits this Reply to Defendant, Nike, Inc.'s Opposition (ECF No. 4). Nike's filing:

Plaintiff Total90, LLC submits this Reply to Nike's Opposition (ECF No. 4). Nike devotes much of its filing to settlement communications. Federal Rule of Evidence 408(a) prohibits use of settlement discussions to prove or disprove the validity or amount of a disputed claim or to impeach by contradiction. Nike offers the settlement emails and proposals for precisely those barred purposes, and the Court should disregard those portions of its Opposition.

Should the Court review the settlement materials notwithstanding Rule 408, the record reflects nothing more than ordinary compromise negotiations. Nike announced the TOTAL 90 III SP Boot on June 20, 2024, and Plaintiff contacted Nike by December 2024—a prompt and reasonable timeframe under standards regularly applied in this Circuit.[1] The parties then

---

[1] *Ronaldo Designer Jewelry, Inc. v. Cox*, 2017 WL 3879095, at *10–11 (N.D. Miss. Sept. 5, 2017)

exchanged reciprocal and substantive communications: Nike acknowledged receiving the proposals, responded to them, requested underlying valuation information, and offered its own figure as part of the dialogue. This history reflects mutual settlement efforts, not unilateral pressure. Plaintiff filed suit only after it became clear that the negotiations had reached an impasse, which is the expected course when compromise proves impossible. Nothing in this sequence undermines the legitimacy, timing, or urgency of Plaintiff's claims.

### I. Nike Abandoned the TOTAL 90 Mark Years Before Plaintiff's Use

Nike attempts to obscure a straightforward abandonment analysis under the Lanham Act. Abandonment occurs when use has been discontinued "with intent not to resume such use," and "use" means bona fide use in the ordinary course of trade, not sporadic references, nostalgia marketing, or internal planning. 15 U.S.C. § 1127. The record Nike submits—including screenshots of legacy shoes from the early 2000s, isolated social-media posts from 2019–2021, pictures from a video game, and references to historical product lines—demonstrates only past fame, not ongoing use in commerce.

Nike's U.S. registration was cancelled on April 19, 2019, for nonuse. Nike identifies no bona fide sales, shipments, advertising campaigns, retail distribution, or inventory of TOTAL 90–branded goods in the United States in the decade preceding its 2024 relaunch. Nike's declarations contain general statements that Nike "continued to use" the mark but offer no evidence of actual commercial activity. Foreign registrations summarized in Duvdevani Exhibit (ECF 4-10 & 4-11) do not create U.S. rights. Trademark rights in the United States arise solely from domestic use in commerce; foreign filings have no bearing on U.S. priority.

Once a mark is abandoned, priority passes to the first bona fide adopter. Total90 began bona fide commercial use in March 2023 and obtained a federal registration in September 2024 (Reg. No. 7,516,774). Plaintiff's use followed Nike's abandonment by several years, and Nike's Opposition offers no competent evidence to revive rights that lapsed long ago.

**II. The Digits of Confusion Favor Plaintiff, Particularly Under Reverse Confusion Principles**

Nike asserts Plaintiff failed to address the digits of confusion, but the relevant factors strongly favor Plaintiff and reinforce the likelihood of reverse confusion. The marks TOTAL90 and TOTAL 90 are identical in appearance, sound, and meaning. The parties' goods substantially overlap: Plaintiff offers athletic apparel, soccer-related gear, and shoes; Nike markets athletic footwear, apparel, and soccer-related merchandise using the abandoned TOTAL 90 mark. The channels of trade and purchasing demographics materially intersect, as both parties sell athletic products online and through general retail outlets to similar consumers. Purchasers of such goods typically exercise low care.

Nike proceeded with a large-scale relaunch after receiving Plaintiff's objections and after learning of Plaintiff's federal registration. In the reverse-confusion context, the intent factor does not require copying; it is satisfied when a powerful junior user, with full knowledge of the senior user's mark, saturates the market and overwhelms the senior user's identity. The absence of extensive actual confusion at this early stage is unsurprising where the junior user's marketing is new and dominant; actual confusion is not required (but exists here). The likely result of the

relaunch is that consumers will believe Plaintiff is affiliated with Nike or subordinate to it. Viewed together, these considerations show a strong likelihood of reverse confusion and support Plaintiff's likelihood of success.

### III. Irreparable Harm Is Presumed Under the Trademark Modernization Act

The Trademark Modernization Act restores the presumption of irreparable harm upon a showing of likelihood of success. 15 U.S.C. § 1116(a). Nike attempts to rebut the presumption by focusing on the negotiation period and suggesting Plaintiff lacked urgency. As explained above, Plaintiff contacted Nike within months of the announcement, engaged in reciprocal discussions, and filed suit once negotiations reached an impasse. Courts consistently hold that settlement discussions do not negate irreparable harm; they demonstrate diligence and an effort to avoid litigation. Nike identifies no prejudice attributable to any purported delay, and none exists.

The harm to Plaintiff is immediate and irreparable. Nike's reintroduction of the identical mark threatens to displace Plaintiff in the market, destroy the association between Plaintiff and its brand, and undermine the source-identifying function of the TOTAL90 mark. Loss of control over one's identity, brand integrity, and public perception cannot be remedied by monetary damages. The presumption of irreparable harm stands unrebutted.

### IV. The Balance of Equities Favors Plaintiff

Nike contends that injunctive relief will impose significant costs because Nike invested in the 2024–2025 relaunch. But Nike made those investments with full knowledge that it had abandoned its U.S. rights, full knowledge of Plaintiff's existing registration and objections, and full control over whether to proceed. A junior user's voluntary expenditure does not outweigh

the senior user's statutory rights. Plaintiff, by contrast, faces loss of brand identity, erosion of goodwill, and substantial marketplace confusion that cannot be undone. Without relief, Plaintiff faces immediate loss of control over its brand identity and significant marketplace displacement—harms quintessentially irreparable.

### V. The Public Interest Supports Injunctive Relief

The public interest is advanced by preventing consumer confusion, preserving the integrity of the trademark system, and protecting lawful senior users from being overwhelmed by far larger junior users. Nike's argument that consumers will lose access to its relaunched TOTAL 90 III SP Boot presumes Nike has valid priority, which the record does not support. The public interest favors ensuring accurate indicators of source and preventing precisely the confusion reverse-confusion doctrine is designed to address.

### CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court grant its Motion for Temporary Restraining Order and Preliminary Injunction.

RESPECTFULLY SUBMITTED:

_____

Quantum Counsel, LLC
Jarred P. Bradley, Esq. #33460 Louisiana Texas Bar #24108754
W. Jared Vincent #27695 Louisiana
143 Metairie Heights Ave, Metairie, LA 70001
(504) 875-1015 Cell | (504) 389-4540 Fax
jpb@thequantumcounsel.com
wjv@thequantumcounsel.com

Certificate of Service
Jarred P. Bradley certifies that a copy of this response will be sent to all counsel of record through the CM/ECF system this 18th day of November, 2025.

/s/ Jarred Bradley

5