UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TOTAL90, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-2325** |
| **NIKE, INC.** | **SECTION: D (3)** |

### ORDER AND REASONS

Before the Court is an Ex Parte Motion for Temporary Restraining Order and Preliminary Injunction filed by Plaintiff Total90, LLC ("Total90").[1] Defendant Nike, Inc. ("Nike") has filed a Response in Opposition to the Motion.[2] The Court held a telephone status conference with all parties on Tuesday, November 18, 2025, and, at the request of Plaintiff and without objection, the Court permitted Plaintiff to file a Reply. Plaintiff did so.[3] After careful consideration of the parties' briefing, the record, and the applicable law, the Court **DENIES** the Motion for Temporary Restraining Order.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**[4]

Plaintiff Total90, LLC, is a Louisiana limited liability company and, since February 24, 2022, owns United States Trademark Registration Nos. 7,516,774 and 7,496,089, which trademark the phrase TOTAL90® for apparel, footwear, and digital entertainment services that relate to the sport of soccer.[5] Plaintiff claims that Nike, Inc., which formerly held a trademark for "Total 90" that had been used since 2000

---

[1] R. Doc. 2.
[2] R. Doc. 4.
[3] R. Doc. 10.
[4] The factual background is taken from Plaintiff's Motion and Defendant's Response, which does not afford them the benefit of truth.
[5] R. Doc. 1 at pp. 4-5.

but was canceled on April 19, 2019, abandoned the mark and then infringed upon Plaintiff's use of the mark.[6]

Plaintiff Total90 filed suit in this Court on November 14, 2025, asserting the following causes of action against Defendant Nike, Inc:

1. Federal Trademark Infringement under 15 U.S.C. §1114
2. Federal Unfair Competition and False Designation of Origin under 15 U.S.C. §1125(a)
3. Violation of the Louisiana Unfair Trade Practices and Consumer Protection Act under La. R.S. §51:1405
4. Louisiana Trademark Infringement under La. R.S. §51:222

Total90 then filed the instant Motion on the same day, seeking a temporary restraining order that enjoins Defendant from

1. Using the mark "TOTAL 90" or any confusingly similar designation in connection with the advertising, distribution, or sale of goods or services;
2. Manufacturing, promoting, or selling any goods bearing the infringing mark;
3. Passing off any goods as those of Plaintiff; and
4. Engaging in any conduct likely to cause confusion as to the source of Plaintiff's products.[7]

Plaintiff requests the TRO based on its claim under 15 U.S.C. §1114 for use of a "confusingly similar mark."[8] Plaintiff argues that reverse confusion has occurred because Defendant's saturation of the market with "Total 90" shoes has caused confusion among consumers to assume that Plaintiff's products are related to Nike. Plaintiff contends that the damage to goodwill constitutes irreparable harm per se

---

[6] R. Doc. 1 at p. 6.
[7] R. Doc. 2 at p. 6.
[8] *See id.* at pp. 3-4. In its Motion, Plaintiff does not address any other of the claims mentioned in its Complaint.

under the Lanham Act.[9] Lastly, Plaintiff argues that both the balance of equities and the public interest favor injunctive relief in favor of Total90.[10]

Defendant Nike responds that Plaintiff Total90 has failed to meet each prong of a temporary restraining order analysis. Nike contends that it, not Plaintiff, is the senior user of the mark "Total 90" and that it has not "abandoned" its trademark, even though it did not renew its U.S. registration for the mark in 2019 when it was canceled.[11] Furthermore, Nike argues that Plaintiff has not addressed whether Nike's use of "Total 90" is likely to cause confusion.[12] Defendant further alleges that Plaintiff had notice for over a year that Nike intended to release a new soccer cleat with "Total 90" branding and that the presumption of irreparable injury under the Lanham Act did not apply as a result.[13] Nike also responds that Plaintiff has failed to address how injunctive relief would affect Nike, as required by the balance of equities prong, and that Plaintiff has also failed to demonstrate that the issuance of a TRO will not impair the public interest.[14]

In its Reply, Plaintiff reiterates that it believes Nike had abandoned the mark and addresses the digits of confusion analysis, stating that they favor Plaintiff.[15] Additionally, Plaintiff contends that the balance of equities favor injunctive relief because they are the senior user and, as such, have statutory rights in the mark.[16]

---

[9] *Id.* at p. 4.
[10] *Id.* at pp. 4-5.
[11] R. Doc. 4 at pp. 10-12.
[12] *Id.* at pp. 14-16.
[13] *Id.* at pp. 17-18.
[14] *Id.* at pp. 20-23.
[15] R. Doc. 10 at pp. 2-3.
[16] *Id.* at p. 4.

Lastly, Plaintiff argues that the public interest in preventing consumer confusion supports injunctive relief in this case.[17]

## II. LEGAL STANDARD

This Court has recognized that temporary restraining orders constitute extraordinary relief and are rarely issued.[18] "A TRO is simply a highly accelerated and temporary form of preliminary injunctive relief, requiring that movant establish the same four elements for obtaining a preliminary injunction . . . ."[19] To obtain a temporary restraining order or a preliminary injunction, the movant must show: (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the defendant; and (4) the granting of the injunction will not impair the public interest.[20] If a party fails to meet any of the four requirements, the district court must deny the application for a temporary restraining order.[21] Additionally, the party requesting the temporary restraining order must provide "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."[22]

---

[17] *Id.* at p. 5.
[18] *Treen v. Brown*, Civ. A. No. 10-3359, 2010 WL 4027714, at *1 (E.D. La. Oct. 13, 2010) (Vance, J.) (quoting *Albright v. City of New Orleans*, 46 F. Supp. 2d 523, 532 (E.D. La. 1999)).
[19] *MMR Constructors, Inc. v. JB Group of LA, LLC*, Civ. A. No. 22-00267-BAJ-RLB, 2022 WL 1223919, at *3 (M.D. La. April 26, 2022) (Jackson, J.) (citing *Garza v. Starr Cty.*, 309 F. Supp. 3d 454, 456 (S.D. Tex. 2018)).
[20] *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987) (citing *Canal Authority of the State of Florida v. Callaway,* 489 F.2d 567, 572-73 (5th Cir.1974)).
[21] *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss*, 577 F.3d 250, 253 (5th Cir. 2009).
[22] Fed. R. Civ. P. 65(c).

## III.   ANALYSIS

### A. Total90 has satisfied the procedural requirements for obtaining a TRO.

While Total90's original Motion for a TRO was *ex parte*, counsel for Nike has entered an appearance and filed a response,[23] making this temporary restraining order no longer *ex parte*. As such, the procedural requirements of Fed. R. Civ P. 65 for *ex parte* issuance of a TRO no longer apply. Thus, the procedural requirements for obtaining a TRO have been met.

### B. Total90 has not satisfied the substantive requirements for obtaining a TRO.

#### 1. *Likelihood of Success on the Merits*

To establish a likelihood of success on the merits, a plaintiff does not need to prove his case.[24]  As explained by one of our sister courts, "Even some likelihood of success can be enough to support the issuance of a preliminary injunction."[25]  Total90 focuses its argument on reverse confusion between its trademark and Nike's release of "Total 90" shoes.[26]  Nike responds that Plaintiff has not demonstrate either that it has a legally protectable mark or that Nike's use of "Total 90" is likely to cause confusion.

---

[23] R. Doc. 4.
[24] *Lakedreams v. Taylor*, 932 F.2d 1103, 1109 n.11 (5th Cir. 1991) (citing *H & W Industries, Inc. v. Formosa Plastics Corp.*, 860 F.2d 172, 179 (5th Cir. 1988)).
[25] *Association of Taxicab Operators, USA v. City of Dallas*, 760 F. Supp. 2d 693, 696 (N.D. Tex. 2010) (citing *Productos Carnic, S.A. v. Cent. Am. Beef and Seafood Trading Co.*, 621 F.2d 683, 686 (5th Cir. 1980) ("Where the other factors are strong, a showing of some likelihood of success on the merits will justify temporary injunctive relief.")). *See*, *MMR Constructors, Inc.*, Civ. A. No. 22-00267-BAJ-RLB, 2022 WL 1223919 at *4 ("To establish a likelihood of success on the merits, a plaintiff 'need not show that success is an absolute certainty.  He need only make a showing the probability of her prevailing is better than fifty percent.'") (quoting *Eng v. Smith*, 849 F.2d 80, 82 (2d Cir. 1988)).
[26] R. Doc. 2 at pp. 4-5.

To prevail on a claim of trademark infringement under the Lanham Act, the plaintiff must show that (1) it possesses a legally protectable trademark and (2) [the defendant's] use of this trademark 'creates a likelihood of confusion as to source, affiliation, or sponsorship.'"[27] For a party to have a legally protectable trademark, it must be either inherently distinctive or must inquire distinctiveness through a secondary meaning; "[r]egistration of a mark with the PTO is 'prima facie evidence that the mark[ ] [is] inherently distinctive.'"[28] To determine whether a likelihood of confusion has occurred, a court must consider

> (1) the type of trademark allegedly infringed,
> (2) the similarity between the two marks,
> (3) the similarity of the products or services,
> (4) the identity of the retail outlets and purchasers,
> (5) the identity of the advertising media used,
> (6) the defendant's intent, and
> (7) any evidence of actual confusion.[29]

These "digits of confusion" are not exhaustive, and "a finding of a likelihood of confusion does not even require a positive finding on a majority" of these digits is not necessary to find that a likelihood of confusion exists.[30]

Plaintiff avers that it has a valid trademark registered with the United States Patent and Trademark Office (PTO) for TOTAL90®.[31] Although registration with the PTO is prima facie evidence of the mark's inherent distinctiveness, the Court finds that Plaintiff has not borne its burden to demonstrate that it is the senior user of the

---

[27] *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017) (*quoting Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.,* 783 F.3d 527, 536 (5th Cir. 2015)).
[28] *Id.*
[29] *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998).
[30] *Id.*
[31] R. Doc. 2 at p. 2.

mark. Because "[o]wnership of trademarks is established by use, not by registration," the senior user is determined by examining the use of the trademark.[32] Once the senior user is established, the senior user is entitled to enjoin "the junior users from using the mark, or one that is deceptively similar to it, subject to limits imposed by the senior user's market and natural area of expansion."[33]

Plaintiff's argument that it is the senior user hinges on the allegation that Defendant Nike abandoned the mark. Abandonment occurs when (1) "its use has been discontinued with intent not to resume such use" or when (2) the owner "causes the mark to become the generic name for the goods or services on or in connection with which it is used or otherwise to lose its significance as a mark."[34] Defendant has provided evidence that it has continued to use the mark even after registration lapsed.[35] Plaintiff has not made a showing that (1) Nike abandoned the mark or that (2) it has become the owner of the mark, as established through use. As a result, Plaintiff has not met its burden to show a substantial likelihood of success on the merits of the first prong of the infringement analysis.

Furthermore, Plaintiff has failed to meet its burden regarding the second prong of the analysis—a likelihood of confusion. The Fifth Circuit requires district courts to examine the mark based on certain "digits" to determine whether a likelihood of confusion exists. Plaintiff failed to address these digits in its Motion but

---

[32] *Union Nat. Bank of Texas, Laredo, Tex. v. Union Nat. Bank of Texas, Austin, Tex.*, 909 F.2d 839, 842 (5th Cir. 1990).
[33] *Id.* at 842-43.
[34] 15 U.S.C.
[35] See R. Doc. 4 at pp. 6-7; 4-1, *Declaration of Nuno Silva*; 4-2, *Declaration of Agra Diapari*.

has done so in its Reply, in which it argued that the marks "Total90" and "Total 90" are identical in sound, appearance, and meaning and that both parties' goods are of a similar nature.[36] While not required, the seventh digit, actual confusion, constitutes the "best evidence of a likelihood of confusion."[37] While Plaintiff has addressed a number of the digits, the Court finds that it has not carried its burden of showing a substantial likelihood of success on likelihood of confusion prong of a Lanham Act trademark infringement analysis.[38] Plaintiff has not provided evidence that it uses the same or similar retail outlets as Defendant or that the Defendant intended to saturate the market to overwhelm its identity. Additionally, although it argues the similarity of the mark, Plaintiff has not presented evidence that demonstrates "the marks in the context that a customer perceives them in the marketplace, which includes their presentation in advertisements."[39] Further, and most importantly, Plaintiff has not provided evidence of any *actual* confusion, which would provide the best evidence regarding the likelihood of confusion. As a result, the Court finds that Plaintiff has not demonstrated a likelihood of confusion. Because Plaintiff has failed to prove a substantial likelihood of success on the merits, a temporary restraining order will not be issued.

---

[36] R. Doc. 10 at pp. 3-4.
[37] *Future Proof Brands, L.L.C. v. Molson Coors Beverage Co.*, 982 F.3d 280, 289 (5th Cir. 2020).
[38] The Court does not consider any of the other claims mentioned in the Complaint (R. Doc. 1) because they are not raised in the Motion for Temporary Restraining Order and Preliminary Injunction or in Plaintiff's Reply.
[39] *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 485 (5th Cir. 2004) (quoting *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 197 (5th Cir. 1998)).

### *2. Substantial Threat of Irreparable Harm*

Plaintiff argues that it faces "immediate and irreparable harm" should the ongoing infringement not be enjoined and contends that the resulting injury to good will constitutes irreparable harm per se under the Lanham Act.[40] Defendant responds that, although there is a rebuttable presumption of irreparable harm, Plaintiff has failed to show a likelihood of success on the merits and that any presumption of irreparable harm has been rebutted by the evidence it has provided in its opposition.[41] Plaintiff replies that Nike has failed to rebut the presumption of irreparable harm on the Trademark Modernization Act.[42]

Irreparable harm is an injury that, "cannot be undone through monetary damages,"[43] or for which monetary damages are "especially difficult" to compute.[44] The Trademark Modernization Act provides that a plaintiff that seeks an injunction regarding trademark infringement "shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction or upon a finding of likelihood of success on the merits."[45] However, "a substantial period of delay" demonstrates "that there is no apparent urgency to the request for injunctive relief."[46]

---

[40] R. Doc. 2 at p. 4.
[41] R. Doc. 4 at p. 16.
[42] R. Doc 10 at p. 4.
[43] *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) (citations omitted).
[44] *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 630 n. 12 (5th Cir. 1985).
[45] 15 U.S.C. §1116(a).
[46] *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995).

Evidence provided to the Court Plaintiff first contacted counsel for Defendant about its registration of "Total90" in December 2024.[47] Nearly eleven months later, and after numerous communications, seemingly in some and clearly in others, seeking monetary payment to give up its registration of the mark, Plaintiff filed the present suit and moved for the instant TRO.[48] Sister courts in this Circuit have noted that "[w]hen an emergency exists, people act accordingly."[49] A party suffering immediate, irreparable harm "would and should seek injunctive relief rather than, or in addition to, engaging in negotiations."[50] Filing a motion for a temporary restraining order only after settlement negotiations have soured demonstrates a delay sufficient to rebut the presumption of irreparable harm for the issuance of a TRO for infringement under the 15 U.S.C. §1116(a).[51] Because Plaintiff waited nearly eleven months to seek emergency temporary injunctive relief from this Court in the form of a TRO, the Court finds that the presumption under the Trademark Modernization Act has been successfully rebutted and that Plaintiff has failed to demonstrate that it will suffer immediate, irreparable harm should a TRO not issue.

---

[47] R. Doc. 4-3, *Declaration of Michael Harris*, at ¶2.
[48] *See* R. Doc. 4-7 at p. 3 ("My client holds a federal registration and remains willing to resolve this matter amicably. We would much prefer to negotiate a mutually beneficial agreement rather than escalate") and at p. 11 ("I remain committed to a peaceful and mutually beneficial resolution, as you've suggested is possible, and want to ensure my approach doesn't inadvertently trade on Nike's goodwill"); *see also* R. Docs. 4-4, 4-8, and 4-9.
[49] *Massimo Motor Sports LLC v. Shandong Odes Indus. Co.*, No. 3:21-CV-02180-X, 2021 WL 6135455, at *2 (N.D. Tex. Dec. 28, 2021).
[50] *Ronaldo Designer Jewelry, Inc. v. Cox*, No. 1:17-CV-2-DMB-DAS, 2017 WL 3879095, at *11 (N.D. Miss. Sept. 5, 2017).
[51] *See Gonannies, Inc. v. Goupair.Com, Inc.*, 464 F. Supp. 2d 603, 609 (N.D. Tex. 2006); *see also Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185, 1193 (5th Cir. 1975) (finding that a district court did not abuse its discretion in denying temporary relief after a three-month delay).

## IV.  CONCLUSION

Because the Court finds that Total90 has not met its burden to prove a substantial likelihood of success on the merits of its claim and further has not met its burden to show or a substantial threat of irreparable harm, it need not address whether Plaintiff has shown that the threatened injury, if the injunction is denied, outweighs the threatened harm to defendant and that the public interest is not impaired by the issuance of a TRO.

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for a Temporary Restraining Order[52] is **DENIED**.

New Orleans, Louisiana, November 26, 2025.

*[Signature]*
**WENDY B. VITTER**
**United States District Judge**

---

[52] R. Doc. 2.